THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GLASSWALL SOLUTIONS LIMITED, and GLASSWALL (IP) LIMITED,

    Plaintiffs,

v.

CLEARSWIFT LTD.,

    Defendant.

No. 2:16-cv-1833-RAJ

**DEFENDANT CLEARSWIFT LTD.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)**

NOTED FOR CONSIDERATION:
APRIL 28, 2017

**ORAL ARGUMENT REQUESTED**

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT
(No. 2:16-cv-1833-RAJ)

LEGAL135374669.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................. 1

II. THE CLAIMS, NOT THE SPECIFICATION, DETERMINE PATENTABILITY ................................................................................................. 2

III. THE RELEVANT AUTHORITIES SUPPORT DISMISSAL ............................. 4

    A. Glasswall Does Not Persuasively Distinguish the Controlling Authority ................................................................................................. 4

    B. The Patent Office Guidelines Are Not Binding or Persuasive .................. 7

    C. The Glasswall Patents Are Not Directed to Improving Computer Performance ................................................................................................. 8

    D. The Patent Claims Are Not Directed to an Inventive Concept .................. 8

    E. The Declarations Are Improper and Irrelevant ......................................... 9

IV. CONCLUSION .................................................................................................... 10

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - ii
(No. 2:16-cv-1833-RAJ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES

Page

**CASES**

*Accenture Global Servs. GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)..................................................................................2

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  ___ U.S. ___, 134 S. Ct. 2347 (2014)..............................................................1, 2, 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)..................................................................................7

*Cybersource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011)..................................................................................6

*DDR Holdings v. Hotels.com*,
  773 F.3d 1245 (Fed. Cir. 2014)..............................................................................8, 9

*Diamond v. Diehr*,
  450 U.S. 175 (1981)...................................................................................................4

*Elec. Power Grp., LLC v. Alstom, S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)..................................................................................7

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)..................................................................................8

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016)..................................................................................7

*Gottschalk v. Benson*,
  409 U.S.C. 63 (1972).................................................................................................6

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015)..................................................................................7

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)..........................................................1, 2, 4, 5, 6, 7, 8

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016)..................................................................................3

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - iii
(No. 2:16-cv-1833-RAJ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

35 U.S.C. § 101 .................................................................................................................1, 2, 3, 4, 10

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - iv
(No. 2:16-cv-1833-RAJ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL135374669.1

## I.     INTRODUCTION

Defendant ("Clearswift") seeks an order dismissing the First Amended Complaint because the claims of the asserted patents are not directed to patentable subject matter under 35 U.S.C. § 101.  As discussed in Clearswift's opening papers, the claims are directed to the abstract concept of receiving an electronic file (*e.g.*, email), parsing it for acceptable content based on a "set of rules," forwarding the acceptable content in a revised file to the recipient, and forwarding the unacceptable content only if it has been previously authorized by the recipient.

In opposition, plaintiffs ("Glasswall") makes various arguments, none of which is persuasive.  Glasswall relies, for example, on the specification to identify specific embodiments of the claimed invention.  Patent eligibility, however, is focused on the *claims*.  Even if there are concrete embodiments disclosed in the specification, the claims are still unpatentable if they are directed to an abstract concept and are not limited to something "significantly more" than the concept itself.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, ___ U.S. ___, 134 S. Ct. 2347, 2355 (2014).

Glasswall also relies heavily on an example in the Patent Office guidelines as to what is patentable subject matter.  Those guidelines are not controlling law, however, and were issued before recent controlling decisions, including *Symantec*.  See *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016).  In *Symantec*, the Federal Circuit held that claims directly analogous to those in the instant case were directed to unpatentable subject matter.  Glasswall cannot persuasively distinguish *Symantec* or other more recent Federal Circuit decisions.

Glasswall also relies on the fact that the examiner at the Patent Office allowed the claims. This is true, however, of every patent that has been invalidated in the courts, whether under 35 U.S.C. § 101 or otherwise.  The Federal Circuit has held that the Patent Office has mistakenly

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - 1
(No. 2:16-cv-1833-RAJ)

LEGAL135374669.1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  allowed numerous patents, including patents allowed after the Alice[1] decision. *Alice Corp. Pty.*
2  *Ltd. v. CLS Bank Int'l*, ___ U.S. ___, 134 S. Ct. 2347, 2355 (2014).
3      Finally, Glasswall relies on two declarations, one of which relates to the underlying
4  patent application and Patent Office regulations (*i.e.,* the Rogson declaration), and the other to
5  Glasswall's commercial products, including awards it has received (*i.e.,* the Leopold
6  declaration). The declarations are both improper and irrelevant. First, this is a Rule 12 motion
7  on the pleadings, and the Court need not consider extrinsic evidence. Second, Mr. Rogson's
8  declaration is directed to issues of law and his opinions, including his opinion on the ultimate
9  legal issue of patentability (¶11) is improper and should be excluded. Similarly, product
10 performance and awards are irrelevant as to whether the patent *claims* are directed to
11 unpatentable subject matter. The commercial success of a product has no bearing on the
12 patentability of the patent claims.
13     These and the other arguments raised by Glasswall are addressed in more detail below.
14 **II.   THE CLAIMS, NOT THE SPECIFICATION, DETERMINE PATENTABILITY**
15     Glasswall spends substantial time discussing embodiments described in the specifications
16 of the '283 and '045 patents. (*See, e.g.,* Opp. at 4-9). Glasswall specifically argues "[o]nly after
17 the disclosures and teachings of the '283 and '045 specification are understood can the Court
18 turn to the task of determining the essential character of the subject matter claimed." (Opp. at p.
19 9; *see also id.* at 11 (relying on the "specification's explanation of the disadvantages inherent in
20 typical anti-virus programs found in the prior art . . . .")).
21     The issue of patentablity turns, however, on the scope of the *claims*, not the embodiments
22 described in the specification. *See, e.g.*, *Symantec*, 838 F.3d at 1322 ("The district court erred in
23 relying on technological detail set forth in the patent's specification and not set forth in the
24 claims to find an inventive concept."); *Accenture Global Servs. GmbH v. Guidewire Software,*
25 *Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("The important inquiry for a § 101 analysis is to look

---

[1]

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - 2
(No. 2:16-cv-1833-RAJ)

LEGAL135374669.1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

to the claim."); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

The patent claims recite, in essence, the concept of receiving an electronic file, parsing it for allowable content (as opposed to unallowable content), and forwarding such content to the recipient in a regenerated file, while not forwarding the unallowable content absent prior approval. Further, the claims preempt any use of the concept, because they are not directed to a specific set of rules or implementation. As an example, claim 1 of the '283 patent recites steps such as receiving, determining, extracting, creating and forwarding, without providing a specific manner or detail about how such functions are to be performed. The claim refers, for example, to "determining at least an allowable portion of the content data that conforms with the values or range of values specified in the set of rules . . . ." Again, the claim does not recite a specific manner or algorithm for determining what is an "allowable portion" of the content, other than referring to conformance with unspecified "values or range of values" in an unspecified "set of rules." The claim is thus directed to the abstract concept itself.

Although Glasswall refers to specific embodiments relating to "word processing files, I-frames and HTML pages, and infrequently-used control characters and ASCII files" (Opp. at 6), these specific embodiments are applications of the abstract concepts not recited in the claim language. The claim language is directed to the broad concept of receiving an electronic file, identifying allowable content based on an unspecified set of rules, forwarding a regenerated file with only such content, and forwarding non-conforming data only if there has been pre-approval or authorization.[2]

In fact, as Glasswall appears to concede, the essence of the claimed invention is that "malware protection can be achieved by detecting normality . . . rather than attempting to detect abnormality . . . making it unnecessary to use virus definition files at all . . . ." (Opp. at 6). The

---

[2] Claim 1 of the '283 patent refers to forwarding such non-conforming data "only when the intended recipient of the electronic file has pre-approved the predetermined file type when associated with the sender," while claim 1 of the '045 patent refers to simply determining whether the "non-conforming data is . . . authorized."

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - 3
(No. 2:16-cv-1833-RAJ)

LEGAL135374669.1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

patent claims recite this approach not by explaining specific rules or methods for determining "normality" but by attempting to encompass any manner of determining normality or conforming data based on a "set of rules."

## III. THE RELEVANT AUTHORITIES SUPPORT DISMISSAL

### A. Glasswall Does Not Persuasively Distinguish the Controlling Authority

Glasswall cannot persuasively distinguish the controlling authority, including the *Symantec* decision. In *Symantec*, the asserted claims of three patents were directed to receiving, inspecting, filtering and distributing emails and other electronic files. *See Symantec*, 838 F.3d at 1316-18. As in the instant case, the patentee in *Symantec* argued that the inventions improved virus scanning techniques, including by shortening the time between when a virus is identified and the protection distributed to users (referred to as the "protection gap"). Further, in *Symantec*, the patent owner had prevailed at trial, with the jury rejecting the defendant's invalidity defenses. The patentee argued that the decision established the "inventive concept" of the claims. The Federal Circuit rejected all of such arguments. *Symantec*, 838 F.3d at 1316. With respect to the improvements discussed in the specification, the Federal Circuit noted those were irrelevant because they were not in the claim language. *Id.* at 1316 ("[T]he asserted claims do not contain any limitations that address the protection gap or volume problem . . . ."). The Federal Circuit also rejected the plaintiff's arguments regarding novelty, noting that the "'novelty' of any element or steps in a process, or even the process itself, is of *no relevance* in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Id.* at 1315 (emphasis in original) (quoting *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981)).

Glasswall's attempts to distinguish *Symantec* are unpersuasive. Glasswall primarily argues, for example, that *Symantec* relied on the fact that the claims "could easily be analogized to processes occurring in a 'brick and mortar' post office or corporate mail room." (Opp. at 16). Glasswall argues that its patents do not have any "brick-and-mortar analogy," and that "it is

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - 4
(No. 2:16-cv-1833-RAJ)

LEGAL135374669.1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

impossible to call to mind a long prevalent, fundamental practice that can be analogized to the technology of the Glasswall patents." (Opp. at 17). This is wrong. First, the Federal Circuit relied on the mailroom analogy for only one of the three patents—the '142 patent. *See* 838 F.3d at 1317. It found the '050 patent, which was directed to filtering emails to avoid spam, and the '610 patent, which was directed to virus screening, as directed to ineligible subject matter without reliance on a "brick-and-mortar analogy." Second, even if such a non-computer analogy were necessary (which is not true), Glasswall's patents are directly analogous to human censors of content (*e.g.*, correspondence or publications censored by a repressive regime), who search content for conformance with a set of rules (*e.g.,* all references to the regime must be in a positive light), remove or redact any non-conforming information, and send the remaining content onto the recipient, unless non-conforming content has received prior authorization.

This analogy is at least as applicable as the analogy in *Symantec* to a post office, where the claim language was directed to applying certain business rules to email and forwarding the emails based on the application of such rules. In fact, the claim language in *Symantec* was much more specific, requiring, among other things, a

> distribution mechanism coupled to receive the set of actions from the rule engine . . . and which in response to the rule engine applying an action of deferring delivery of the e-mail message, the distribution engine automatically combines the e-mail message with a new distribution list specifying at least one destination post office from receiving the e-mail message for review by the administrator . . . and a rule history specifying the business rules that were determined to be applicable to the e-mail message . . ., and automatically deliver[ing] the e-mail message to a first destination post office on the distribution list instead of a specified recipient of the e-mail message..[3]

838 F.3rd at 1317.

Similarly, Glasswall attempts to distinguish *CyberSource* on the basis that the computer transactions relevant in *CyberSource* could theoretically be performed by a "human using a pen

---

[3] Glasswall's analogy to "anthrax-laden letters" is similar. In either case, an intermediary is inspecting the contents of a communication and removing non-conforming content before forwarding the communication to the recipient.

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - 5
(No. 2:16-cv-1833-RAJ)

LEGAL135374669.1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1. and paper." (Opp. at 18). Glasswall argues that its patents are not subject to a mental process because they involve the "concept of storing sets of rules, values, and parameters of normal, acceptable file formats for the wide variety of file types commonly exchanged in computer communications." (*Id.* at 18-19). Glasswall argues that electronic computer files are "vastly too complex to be processed with pen and paper." (Opp. at 19). Again, this is misleading. The claims do not require storing information on a large number of file formats, processing multiple or complex electronic files, or even storing a complex set of rules. Instead, the claim encompasses receiving a single electronic file, in a single predetermined file type, and any set of rules to identify conforming content. The claims thus encompass reviewing a single simple email, applying a single rule, and then forwarding the conforming data to the recipient in a regenerated file. *Cf. Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011) (finding that human being could perform steps relating to detecting fraud from internet transactions because, in part, the patent claims did not require anything "more than a list of a few credit card transactions" and would encompass "*any* method for detecting fraud based on the gathered transaction and Internet address data") (emphasis in original).

There is no fundamental reason why a human being could not review an email, apply a set of rules, and then forward the conforming content to the recipient in a new email. The Glasswall patents simply take this fundamental concept and claim it in a computer environment, which does not render it patentable. *See Gottschalk v. Benson*, 409 U.S.C. 63, 70-71 (1972) (finding that claims relating to conversion of numbers were directed to mental processes even though the algorithm had "no substantial practical application except in connection with a digital computer"); *Symantec*, 838 F.3d at 1318 ("Furthermore, with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper.").

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - 6
(No. 2:16-cv-1833-RAJ)

LEGAL135374669.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**B.      The Patent Office Guidelines Are Not Binding or Persuasive**

In its attempt to defend the patentability of the claims, Glasswall relies primarily on U.S. Patent and Trademark Office guidelines.  (Opp. at 13-15).  There are multiple reasons why such guidelines are not persuasive.  First, the guidelines are based on the 2014 Interim Eligibility Guidance (Rogson Dec., Dkt. No. 14, Exh. 1 at 1), issued *before* the most relevant authority on the patentability of e-mail filtering and networking concepts, such as the Federal Circuit's decision in *Symantec*.[4]  This, in itself, is a sufficient basis for disregarding the guidelines.

Second, as Glasswell admits, such guidelines are not "precedential authority for this Court."  (Opp. at 15).  Third, the example in the guidelines is, in itself, distinguishable.  The example claim specifically recites computer memory having different sections, including a "boot sector, a quarantine sector and a non-quarantine sector," and specfic scanning steps, such as scanning for "an identified beginning malicious code marker," "flagging each scanned byte between the beginning marker and an successive end malicious code marker . . . and creating a new data file by sequentially copying all non-flagged data bytes into a new file that forms a sanitized communicatigon file . . . ."  The claim thus is signficiantly narrower than those in the instant case, which essentially encompass the concept of reviewing an electronic file for allowable content and forwarding the allowable content in a regenerated file (and forwarding what would otherwise not be allowable content only if there is prior authorization).

---

[4] Other relevant post- guidelines decisions include *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (holding that claims relating to the "abstract idea of extracting and storing data from hard copy documents using generic scanning and processing technology" were patent ineligible); *Elec. Power Grp., LLC v. Alstom, S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) (collecting and analyzing information, and presenting results constitute abstract ideas even if limited to specific content); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016) (methods directed to fraud detection through collecting information, analyzing information according to rules, and providing notification was directed to inelegible subject matter);  and *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015) (claims directed to computer-implemented organization and presentation of data were patent ineligible).

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - 7
(No. 2:16-cv-1833-RAJ)

LEGAL135374669.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### C.   The Glasswall Patents Are Not Directed to Improving Computer Performance

Glasswall also argues that the claimed inventions are directed to improving the performance of computers, analogous to those found patentable in *Enfish*. (Opp. at 21). In *Enfish*, however, the patents related specifically to structuring databases to improve "the way a computer stores and retrieves data in memory." *See Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1327, 1339 (Fed. Cir. 2016). Those improvements allowed for "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337.

The Glasswall patents' claims are not directed to improving the performance of a computer, such as by improving database structures. As Glasswall readily admits, the patents relate to filtering electronic files or e-mails to remove objectionable content. The "concept" covered by the patents is, as Glasswall has admitted, simply looking for normal content as opposed to abnormal content. (Opp. at 6). Even assuming, for the sake of argument, that searching for normal content is somehow better than searching for abnormal content, it does not improve the performance of the underlying computer. "Rather, these claims use generic computers to perform generic computer functions." *Symantec,* 838 F.3d at 1315. At most, it improves the speed or performance of the filtering method. But the use of a computer to do speed up an abstract method does not render the patent eligible, particularly when the claims essentially appear to encompass all ways of identifying conforming content (*i.e.,* according to any "set of rules"), separating that content from non-conforming content, and forwarding the conforming content to the recipient.

### D.   The Patent Claims Are Not Directed to an Inventive Concept

Glasswall also argues that the patent claims are directed to an inventive concept, referencing the Federal Circuit's decision in *DDR Holdings* (Opp. at 21-22). An "inventive concept" requires, however, an "element or combination of elements that is sufficient to ensure that the patent in practice amounts to *significantly more* than a patent on being ineligible concept

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - 8
(No. 2:16-cv-1833-RAJ)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL135374669.1

itself." *Alice*, 134 S. Ct. at 2355 (emphasis added).  The steps of the '283 and '045 patent claims, however, do not recite any specific improved machine, technology or transformation of matter.  They do not even recite any specific algorithm or set of rules for identifying allowable content.  In essence, they are directed to the abstract concept itself—the concept of scanning electronic files to identify conforming (or "allowable" content), separating that content from non-conforming content, and sending only the conforming content to the recipient absent prior authorization.  Glasswall cannot point to anything in the claims that renders them as directed to "significantly more" than this abstract c oncept.  The claims at issue here are fundamentally different from those in *DDR Holdings*, which were directed to a specific technique that allowed a website visitor to visit a third-party website without leaving the control of the originating host website.  *See DDR Holdings v. Hotels.com*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) (noting that the claims "do not attempt to preempt every application idea of increasing sales by making two web pages look the same [but instead] recite a specific way to automate the creation of a composite web page by an 'outsource provider'").

### E. The Declarations Are Improper and Irrelevant

Finally, Glasswall relies on two declarations, both of which are inappropriate and directed to irrelevant subject matter.  As an initial matter, this is a Rule 12 motion based on the pleadings, and the Court is not required to consider evidence outside of the pleadings.  Even if such evidence is considered, however, it is not relevant to the patentability of the claims.

Mr. Rogson's declaration contains both fact and expert testimony.  In particular, Mr. Rogson refers to his background with patent applications, discusses the history of the application leading to the patents-in-suit, refers to guidelines of the Patent Office, and then expresses his opinion that the patent "recites statutory subject matter." (¶11).  His opinion on the ultimate legal issue to be addressed by the Court is improper and should be stricken.  The remainder of the declaration, including the fact that the patents were issued by the Patent Office, is irrelevant

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - 9
(No. 2:16-cv-1833-RAJ)

LEGAL135374669.1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  to the Court's determination of patentability. All patents have, by definition, been approved by
2  at least one examiner in the Patent Office.

3  Dr. Leopold's declaration also appears to contain both fact and expert testimony. Dr.
4  Leopold is apparently a paid consultant and part owner of Glasswall, and has a "engineer's
5  understanding of the Glasswall technologies and the patents covering them…." (¶10). His
6  declaration discusses the teachings of the patent specification, and asserts that the Glasswall
7  technology is an "improvement to the typical anti-virus approach…." (¶17). He also refers to
8  specific awards that the Glasswall products have received. As discussed above, the teachings of
9  the specification are irrelevant to whether the claims are directed to patentable subject matter.
10 Similarly, whether the claims encompass technology that is an improvement, or even novel, over
11 the prior art, is irrelevant. This issue is whether the claims are directed to an abstract concept,
12 not whether products applying that concept are useful or successful.

13 Similarly, the fact that Glasswall has sold a product that won some awards is irrelevant to
14 whether the patent *claims* are directed to eligible subject matter. Glasswall cites no authority
15 holding that the commercial success of the patent owner's embodiment of a claimed invention is
16 relevant to whether the patent claims themselves are directed to patent-eligible subject matter.
17 Glasswall cites no authority because there is none. And as noted above, Federal Circuit authority
18 in fact requires that such extrinsic evidence *not* be considered in a § 101 analysis.

### IV. CONCLUSION

For the reasons above, the Court should grant Clearswift's motion to dismiss.

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - 10
(No. 2:16-cv-1833-RAJ)

LEGAL135374669.1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

| | |
|---|---|
| Respectfully submitted April 28, 2017 | By: */s/ Ramsey M. Al-Salam*<br>Ramsey M. Al-Salam, WSBA No. 18822<br>RAlSalam@perkinscoie.com<br>Lane M. Polozola, WSBA No. 50138<br>LPolozola@perkinscoie.com<br>PERKINS COIE LLP<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101<br>Phone: (206) 359-8000/Fax: (206) 359-9000<br><br>***Attorneys for Defendant Clearswift Ltd.*** |

CLEARSWIFT'S REPLY ISO MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT - 11
(No. 2:16-cv-1833-RAJ)

LEGAL135374669.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2017, I caused copies of the foregoing document to be served via ECF to the following counsel of record:

Robert J. Carlson, WSBA #18455
LEE & HAYES, PLLC
701 Pike Street, Suite 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Fax: (206) 315-4004
E-mail: bob@leehayes.com

*Attorneys for Plaintiffs*

/s/ *Ramsey M. Al-Salam*
Ramsey M. Al-Salam

CLEARSWIFT'S MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT – 22
(No. 2:16-cv-1833-RAJ)

LEGAL135374669.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000