HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GLASSWALL SOLUTIONS
LIMITED, and GLASSWALL (IP)
LIMITED,

          Plaintiffs,

   v.

CLEARSWIFT LTD.,

          Defendant.

CASE NO. C16-1833 RAJ

ORDER

**I.  INTRODUCTION**

This matter comes before the Court on Defendant Clearswift, Ltd.'s ("Clearswift") Motion to Dismiss. Dkt. # 8. Plaintiffs Glasswall Solutions Limited and Glasswall (IP) Limited (collectively, "Glasswall") oppose the Motion[1]. Dkt. # 12. For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss. Dkt. # 8.

---

[1] Plaintiffs submit two declarations in support to their opposition to Defendant's Motion. Dkt. ## 13, 14. When resolving a motion to dismiss under Rule 12(b)(6), the Court may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). These

ORDER- 1

## II. BACKGROUND

Glasswall asserts two patents in this lawsuit: U.S. Patent Nos. 8,869,283 ("'283 patent") and 9,516,045 ("'045 patent"). Both are entitled "Resisting the Spread of Unwanted Code and Data" and relate to virus-protection software. The '283 patent and the '045 patent purport to improve upon prior art by providing "an entirely different approach to protection against unwanted code." Unwanted code and data can include computer viruses, spyware, malware, etc. Both patents teach methods or systems of receiving an electronic file, determining the data format, parsing the content data to determine whether it conforms to the predetermined data format, and if so, regenerating the parsed data to create a regenerated electronic file. '283 patent, Abstract; '045 patent, Abstract. Both patents have essentially identical specifications. Dkt. # 12 at 9.

Independent Claim 1 of the '283 patent claims:

A method for processing an electronic file to create a substitute electronic file containing only allowable content data, the method comprising:

> receiving an electronic file containing content data encoded and arranged in accordance with a predetermined file type;
>
> determining a purported predetermined file type of the received electronic file and an associated set of rules specifying values or range of values of allowable content data;
>
> determining at least an allowable portion of the content data that conforms with the values or range of values specified in the set of rules corresponding to the determined purported predetermined file type;

---

declarations are not central to Plaintiffs' claims and will not be considered for the purposes of this Motion.

ORDER- 2

> extracting, from the electronic file, only the at least an allowable portion of content data;
>
> creating a substitute electronic file in the purported file type, said substitute electronic file containing only the extracted allowable content data;
>
> forwarding the substitute regenerated electronic file only if all of the content data from within the electronic file conforms to the values or range of values specified in the set of rules; and
>
> forwarding the incoming electronic file if a portion, part or whole of the content data does not conform only when the intended recipient of the electronic file has pre-approved the predetermined file type when associated with the sender of electronic file.

Dependent Claims 2-6 impose further specific limitations on the determination of known, acceptable file content. Claim 7 imposes the scrambled format file isolation limitation, while Claim 8 provides that the scrambling be in "bit reversed order." Independent Claims 15-17 and 19-23 claim as either a method, computer readable medium product that can execute the method steps, or a device with computer components that can execute the method steps.

The claims in the '045 patent are similarly directed to eliminating unwanted code. Independent Claim 1 of the '045 patent claims:

> A method for resisting spread of unwanted code and data without scanning incoming electronic files for unwanted code and data, the method comprising the steps, performed by a computer system of:
>
> > (a) receiving, at the computer system, an incoming electronic file containing content data in a predetermined file type corresponding to a set of rules;
> >
> > (b) determining a purported predetermined file type of the incoming electronic file;

(c) parsing the content data in accordance with a predetermined data format comprising a set of rules corresponding to the determined purported predetermined file type;

(d) determining nonconforming data in the content data that does not conform to the predetermined data format;

(e) determining that the nonconforming data is authorized; and

(f) regenerating the nonconforming data to create a substitute regenerated electronic file in the purported file type, said substitute regenerated electronic file containing the regenerated content data, if the nonconforming data is determined to be authorized.

The '045 patent also has several independent claims that cover "devices," "systems," and "computer-readable medium" that can execute or contain the same method steps, and dependent claims that add parameters to the method, and add further limitations on the independent claims. Clearswift's Motion addresses independent claim 1 of the '283 patent and independent claim 1 of the '045 patent as representative claims of the other claims in the patents[2].

### III. LEGAL STANDARD

### A. FRCP 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory

---

[2] Glasswall appears to object to Clearswift's treatment of independent claim 1 of the '283 patent and independent claim 1 of the '045 patent as representative claims. Dkt. # 12 at 10. However, Clearswift makes no argument as to why these claims are not representative and does not assert why the Court should differentiate any claim from those identified as representative by Glasswall. Glasswall does not identify any other claims as purportedly containing an inventive concept. As such, the Court will consider independent claim 1 of the '283 patent and independent claim 1 of the '045 patent as representative claims for the purposes of this Motion.

ORDER- 4

allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id*. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### IV. DISCUSSION

#### A. Patent-Ineligibility

Clearswift argues that Glasswall fails to state a claim under Rule 12(b)(6) because the patents it asserts claim patent-ineligible concepts. As a preliminary matter, Glasswall argues that determination of patent eligibility prior to discovery or claim construction is premature. While it is often necessary to resolve claim construction disputes prior to a § 101 analysis in order to gain a full understanding of the claimed subject matter, "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). The "words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed.Cir. 2005). Where, as here, the basic character of the claims can be understood on their face for the purposes of the § 101 analysis, patentability can be examined at the pleading stage. *Bancorp*, 687 F.3d at 1274; *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,*

776 F.3d 1343, 1349 (Fed. Cir. 2014); *see also Intellectual Ventures I LLC v. Erie Indem. Co.*, No. 2017-1147, 2017 WL 5041460 (Fed. Cir. Nov. 3, 2017).

Section 101 of the Patent Act provides that "[w]hoever invents or discovers a new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. However, "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013).

The Supreme Court has established a "two-step analytical framework to identify patents that, in essence, claim nothing more than abstract ideas. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). The first step is to determine whether the claim is directed to a patent-ineligible concept, such as an abstract idea. *Id.* To distinguish claims that are directed to abstract ideas from those that merely involve abstract ideas, courts look to "the 'focus' of the claims" and "their 'character as a whole.'" *Elec. Power Grp., LLC v. Alstom, S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). If the claim is directed to a patent-ineligible concept, the court examines the claim limitations to determine whether they furnish an "inventive concept" that transforms the abstract idea into a patent-eligible application of that idea. *Alice*, 134 S. Ct. at 2355. The second step of this framework is a "search for . . . an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.*

**B. Failure to State a Claim**

    *a. Patent-Ineligible Concept*

Claim 1 of patent '283 claims a method of receiving an electronic file, determining whether that file contains content data that conforms to a predetermined file type, forwarding the file even if it contains nonconforming data if the sender is pre-approved, or if the sender is not pre-approved, extracting the conforming content, creating a

substitute electronic file containing only the extracted conforming content, and forwarding the substitute electronic file. While it would be mischaracterizing this claim to state that it is solely directed to email filtering, the Court finds the reasoning in *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016), to be persuasive. In *Intellectual Ventures*, the patent at issue was directed to filtering emails with unwanted content. The representative claim analyzed recites:

> A method for identifying characteristics of data files, comprising:
>
> > receiving, on a processing system, file content identifier for data files from a plurality of file content identifier generator agents, each agent provided on a source system and creating file content IDs using a mathematical algorithm, via network;
> >
> > determining, on the processing system, whether each received content identifier matches a characteristic of other identifiers; and
> >
> > outputting, to at least one of the source systems responsive to a request from said source system, an indication of the characteristic of the data file based on said step of determining.

The Federal Circuit found that receiving email and other data file identifiers, characterizing the file based on the identifiers, and communicating that characterization was similar in concept to "people receiving paper mail . . . look[ing] at an envelope and discard[ing] certain letters, without opening them, from sources from which they did not wish to receive mail based on characteristics of the mail," a "fundamental, long-prevalent" practice which constitutes an abstract idea. *Intellectual Ventures I LLC*, 838 F.3d at 1314. The Federal Circuit also analogized this claim to other cases in which claims directed to filtering content based on a known list of identifiers were found to be abstract ideas, including the claim in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014), which involved "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory." *Id.* at 1347.

Here, the claim language is similarly directed toward the filtering of electronic files and data. The file is analyzed to see if it conforms to certain parameters, and if data is found that does not conform, it is extracted and the file is regenerated without it. This is analogous to content censoring or the redaction of private information from public documents. Without the added references to the specific applications or the context contained in the patent's embodiments, the claim is directed to an abstract concept. Claim 1 of patent '045 repeats essentially the same method steps of claim 1 of patent '283, but specifies the use of a computer system, and states that the method is "for resisting spread of unwanted code and data without scanning incoming electronic files for unwanted code and data." This slightly altered language does not sufficiently limit or change the method in patent '283 such that the Court would conclude that patent '045 is directed toward a patent-eligible concept.

Glasswall makes several arguments in response to Clearswift's contention that these claims are directed to an abstract idea. Glasswall relies on specific embodiments of the claimed inventions to make its argument regarding the "essential character of the subject matter claimed," stating that the claims "focus on a specific method for improving the relevant malware elimination technology." Dkt. # 12 at 9, 11, 20. This claimed improvement in computer function is not evident by the wording of the claims in the patents. "The important inquiry for a § 101 analysis is to look to the claim." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013); *Intellectual Ventures I LLC*, 838 F.3d at 1322 (Fed. Cir. 2016) (finding that the district court erred relying on technological details set forth in the patent's specification and not set forth in the claims to find an inventive concept). The language of the asserted claims refer to an "allowable portion of the content data" based on "values or range of values specified in the set of rules", but provide no other details regarding what that allowable portion is, or how it would be determined. Nor do the claims indicate how these filtering mechanisms create an improvement in malware technology. Even with the addition of

the information in the specifications of the patents, these claims are not directed to the type of improvement in computer function contemplated by the Federal Circuit in cases such as *Enfish v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). In *Enfish*, the patents were specifically directed to a self-referential table for a computer database rather than simply focusing on the individual functions performed by that self-referential table, i.e. storing, organizing, and retrieving memory in a logical table. The claims in the '283 and '045 patents contain no such limiting or specific language.

      Glasswall also argues that the actions of the U.S. Patent and Trademark Office ("USPTO") support its contention that the patents claim patent eligible concepts. However, the administrative processes of the USPTO are not precedential authority for this Court and the example Glasswall points to as "closely analogous" to the character of the claims in patents '283 and '045 is not persuasive. First, as conceded by Glasswall, while both the example claim in the USPTO guidelines and the representative claims in the patents at issue are directed to eliminating certain types of code, patents '283 and '045 aim to meet this goal in a "fundamentally different manner." Dkt. # 12 at 19. The example is far more specific and has a narrower scope than the claims at issue. The example claim has specific scanning steps, such as scanning for "an identified beginning malicious code marker," or "flagging each scanned byte between the beginning marker and a successive end malicious code marker," as opposed to the broadly worded "determining a purported predetermined file type . . . and an associated set of rules specifying values or range of values of allowable content data" in the claim in patent '283. Second, the USPTO guidelines language states that the concept of the invention claimed by the sample claim is "distinct from the types of concepts found by the courts to be abstract." These guidelines were issued prior to several decisions further interpreting the idea of abstract ideas in relation to computer technology, i.e. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016), and are not indicative of current precedent.

1    Glasswall's reasoning that the patents at issue were not rejected by a patent
2    examiner as directed to an abstract idea is similarly unpersuasive.  As noted by
3    Clearswift, all patents must be approved by an examiner at the USPTO in order to
4    become a patent.  The fact that these patents were not rejected by an examiner is not
5    enough to support its argument that the patents are directed to a patent-eligible concept.

6        *b. Inventive Concept*

7    "Claims that 'amount to nothing significantly more than an instruction to apply
8    [an] abstract idea ... using some unspecified, generic computer' and in which 'each step
9    does no more than require a generic computer to perform generic computer functions' do
10   not make an abstract idea patent-eligible." *Intellectual Ventures I LLC*, 838 F.3d at 1315
11   (quoting *Alice*, 134 S.Ct. at 2359–60).  Further, claiming the improved speed or
12   efficiency inherent with applying the abstract idea on a computer does not provide a
13   sufficient inventive concept." *Intellectual Ventures I LLC v. Capital One Bank (USA)*,
14   792 F.3d 1363, 1367 (Fed. Cir. 2015).

15       Glasswall's patents fail step two of the analytical framework set out in *Alice*
16   because the claim limitations are not sufficient to "ensure that the patent in practice
17   amounts to significantly more than a patent upon the ineligible concept itself."  *Alice*,
18   134 S. Ct. at 2355.  None of the limitations transform the abstract idea in the
19   representative claims into something patent-eligible in application.  Each limitation adds
20   detail to the basic method, such as how the data is stored or forwarded, or describe
21   generic computer components or devices that can be programmed or used to perform that
22   basic method.  None of these limitations in the claim language disclose new, specific
23   components or techniques, or are directed toward an improvement in the way a computer
24   functions, rather are directed to the application of an abstract idea to a generic computer
25   as an alternative to other "virus screening" software.

26       Glasswall argues that the patent claims recite a "specific technique for resolving
27   disadvantages in prior art anti-virus software" but these limitations "do nothing more than

spell out what it means to 'apply it on a computer'" and cannot confer patent-eligibility. *Alice*, 134 S.Ct. at 2359.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. Dkt. # 8.

Dated this 29th day of November, 2017.

The Honorable Richard A. Jones
United States District Judge